The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of the amount of temporary total disability compensation and medical treatment owed plaintiff by defendant.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. A letter dated November 27, 1991, written by the plaintiff, and marked as stipulated exhibit 1, was received into evidence.
2. A letter dated February 19, 1992, written by the plaintiff, and marked as stipulated exhibit 2, was received into evidence.
3. Subsequent to the hearing, the parties submitted an index with thirty-eight sections. This index contains medical records, pharmaceutical records, the plaintiff's answers to interrogatories, and plaintiff's letters to the Commission. These records are contained in a tabbed binder and were marked stipulated exhibit 3 and received into evidence.
4. The Commission takes judicial notice of the contents of the Form 21 entered into by the parties and approved by the Industrial Commission on May 30, 1991.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a thirty-seven year old female with an eighth grade education and a GED.
2. Plaintiff was employed by the defendant-employer as a nursing assistant. On March 8, 1991, plaintiff sustained a compensable injury by accident when she injured her back straining to prevent a patient from falling to the floor when she attempted to transfer the patient from a bed to a chair. The parties entered into a Form 21 agreement approved on May 30, 1991 whereby the defendant-carrier agreed to pay temporary total disability compensation in the amount of $142.75 per week. At the time of the hearing, the plaintiff was still receiving these compensation payments.
3. Plaintiff has suffered from a long history of abdominal pain and migraine headaches. From early 1983, the plaintiff suffered from headaches which she experienced almost every day. From 1986 to 1989 four different surgeries were performed on the plaintiff for her abdominal pain.
4. Plaintiff has suffered from a long history of psychological problems pre-dating the March 8, 1991 injury by accident.
5. Because of plaintiff's chronic headaches and abdominal pain, plaintiff received increasing quantities of habit forming medication from her treating physicians prior to her compensable injury.
6. From March 26, 1991 to June 1991, plaintiff was treated conservatively with physical therapy under the direction of Dr. Califf.
7. In June 1991, Dr. Califf referred plaintiff to Dr. Derian, an orthopedic surgeon, for a surgical evaluation. Dr. Derian has treated plaintiff for her back pain from July 8, 1991 to the present. Dr. Derian has diagnosed moderate degenerative disc disease at L4-L5 and L5-S1, with possible herniation of the disc at L4-L5.
8. In September 1991, Dr. Derian referred the plaintiff to Dr. Jesse McNiel for treatment for depression. On November 13, 1991 Dr. Derian released the plaintiff to return to sedentary work with bending and lifting restrictions. Dr. Derian recommended that plaintiff's psychiatrist provide plaintiff with pain medication.
9. On November 13, 1991, plaintiff reached maximum medical improvement with regard to her back injury. As a result of the March 18, 1991, compensable injury by accident, plaintiff has sustained a fifteen percent permanent partial disability to her back.
10. Plaintiff's disability, if any, after November 13, 1991 is not related to the March 8, 1991 injury by accident, but instead is the result of her pre-existing psychological condition.
11. Plaintiff has not made any efforts to find suitable employment since being released to return to work on November 13, 1991.
12. On September 18, 1991, plaintiff began receiving psychiatric care from Dr. Jesse McNiel. From September 18, 1991 to February 25, 1992, Dr. McNiel attempted to control plaintiff's reported pain with various combinations of medication including Darvocet, Elavil, Xanax, and Vicodin. On February 25, 1992, Dr. McNiel began prescribing Methadone in order to treat the plaintiff's complaints of pain and threats of suicide.
13. From September 18, 1991 to April 25, 1994, plaintiff was seeking treatment from both Dr. McNiel and her family physician, Dr. Mann, and receiving prescription medication from both doctors. Plaintiff knew that Dr. Mann would not have given pain medication prescriptions to her if he had known that plaintiff also was receiving narcotic pain medications from Dr. McNiel. Plaintiff knew that Dr. McNiel would not have continued to prescribe pain medications to her if he had known that she was receiving pain medications from Dr. Mann. Plaintiff willfully misled Dr. Mann and Dr. McNiel as to what prescribed pain medications she was receiving.
14. Plaintiff never communicated to nor gave Dr. Mann any indication that she might be suicidal during any time period subsequent to the March 8, 1991 compensable injury by accident.
15. The depression sustained by the plaintiff was not caused by the March 8, 1991 compensable injury by accident. Plaintiff's depression is more likely to continue or worsen if plaintiff does not return to work.
16. Although plaintiff cannot return to the same job that she was performing for the defendant-employer at the time of her compensable injury by accident, she is physically able to return to work, with some restrictions. Any inability to work is due to plaintiff's Methadone addiction and depression and is not causally related to the injury by accident.
17. Plaintiff's Methadone addiction is the result of plaintiff's willful drug seeking behavior. Because plaintiff has received prescriptions for strong pain medication from Dr. Mann and Dr. McNiel, plaintiff is now addicted to Methadone.
18. Dr. McNiel's decision to provide the plaintiff with Methadone following plaintiff's threats of suicide was an inappropriate method of treatment and was not necessary to effect a cure, give relief to the plaintiff or lessen plaintiff's disability. There is a lack of convincing evidence of record to find by its greater weight that the treatment provided by Dr. McNiel was necessary to effect a cure, give relief or lessen plaintiff's disability.
* * * * * * * * * * *
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On March 8, 1991, plaintiff sustained a compensable injury by accident when she injured her back straining to prevent a patient from falling to the floor when she attempted to transfer the patient from a bed to a chair. N.C. Gen. Stat. 97-2(6).
2. As a result of the compensable injury, plaintiff was temporarily totally disabled and entitled to receive temporary total disability compensation at the rate of $142.75 per week from March 8, 1991 until November 13, 1991. N.C. Gen. Stat. 97-29. This amount has already been paid by defendant.
3. Plaintiff regained the capacity to earn the same wages she was earning at the time of her injury in the same or any other employment on November 13, 1991. Plaintiff has not made any efforts to find suitable employment since being released to return to work on November 13, 1991. Plaintiff is therefore not entitled to further benefits under N.C. Gen. Stat. 97-29 or 97-30. Russellv. Lowes, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. Plaintiff is entitled to compensation at the rate of $142.75 per week for 45 weeks for the 15% permanent partial disability plaintiff sustained to her back as a result of this injury by accident. N.C. Gen. Stat. 97-31(23).
5. Defendant is entitled to a credit for temporary total disability compensation paid to plaintiff after November 13, 1991.
6. Plaintiff is entitled to have the defendants provide all medical treatment for the back injury plaintiff sustained as a result of the March 8, 1991 compensable injury by accident to the extent it tends or tended to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25. The approved medical treatment does not include that rendered by Dr. McNiel.
7. Plaintiff is not entitled to have the defendants provide medical treatment for the depression sustained by the plaintiff, which is not causally related to the injury by accident.
8. Plaintiff is not entitled to have the defendants pay for a detoxification program to cure plaintiff's Methadone addiction. Plaintiff's Methadone addiction is the result of an independent intervening cause attributable to claimant's own intentional misconduct. Heatherly v. Montgomery Components, Inc. 71 N.C. App. 377,323 S.E.2d 29 (1984).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Due to the overpayment of temporary total disability compensation by defendants, plaintiff is entitled to no further compensation for the permanent partial disability to her back.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of this injury by accident. Defendants are not responsible for the payment of plaintiff's medical treatment by Dr. Jesse McNiel.
3. Each side shall bear its own costs for this appeal.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________________ DIANNE C. SELLERS COMMISSIONER